**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DISCOVERY GLOBAL CITIZENS MASTER FUND, LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br> Defendants. | Civil Action No. 16-7321(MAS)(LHG) <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> **Motion Day: September 5, 2017** |

*Captions continue on the next pages*

---

**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF
VALEANT'S PARTIAL MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc.*

| | |
|---|---|
| MSD TORCHLIGHT PARTNERS, L.P., et al., | **Civil Action No. 16-7324(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| BLUEMOUNTAIN FOINAVEN MASTER FUND L.P., et al., | **Civil Action No. 16-7328(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| INCLINE GLOBAL MASTER LP, et al., | **Civil Action No. 16-7494(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| VALIC COMPANY I, et al., | **Civil Action No. 16-7496(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |
| JANUS ASPEN SERIES, et al., | **Civil Action No. 16-7497(MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., | |
| Defendants. | |

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND .............................................................................................. 3

ARGUMENT .................................................................................................. 7

I.   PLAINTIFFS' SECTION 18 CLAIMS FAIL IN ALL SIX INDIVIDUAL
     ACTIONS ............................................................................................. 7

     A.   Plaintiffs In All Six Actions Fail To Meet Section 18's Stringent
          Standard For Pleading Reliance.................................................... 8

     B.   Plaintiffs Assert Claims Barred By Section 18's Statute Of Repose ......... 11

II.  PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL IN
     ALL SIX INDIVIDUAL ACTIONS ...................................................... 13

     A.   SLUSA Preempts Plaintiffs' Negligent Misrepresentation Claims ........... 13

          1.   These Actions Constitute A "Covered Class Action" Under
               SLUSA ........................................................................... 14

          2.   These Actions Allege Misrepresentations In Connection With
               Securities Trades ............................................................. 16

     B.   Even If Not Preempted, Plaintiffs Fail To State Negligent
          Misrepresentation Claims ........................................................... 17

III. PLAINTIFFS IN *DISCOVERY GLOBAL*, *BLUEMOUNTAIN*, *VALIC*, and
     *JANUS* CANNOT RELY ON THE "FRAUD ON THE MARKET"
     PRESUMPTION FOR PURCHASES MADE AFTER OCTOBER 30, 2015.......... 19

CONCLUSION ............................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Amorosa v. Ernst & Young LLP*,
   682 F. Supp. 2d 351 (S.D.N.Y. 2010) ............................................................... 15, 16

*Basic v. Levinson*,
   485 U.S. 224 (1988) ....................................................................................... 19, 20

*CTS Corp. v. Waldburger*,
   134 S. Ct. 2175 (2014) ......................................................................................... 11

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016) ................................................................................. 12

*Dexia SA/NV v. Deutsche Bank AG*,
   No. Civ. 11-5672, 2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) .................................. 11

*Elias v. Ungar's Food Prod., Inc.*,
   252 F.R.D. 233 (D.N.J. 2008) ............................................................................... 17

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ............................................................................................... 7

*Gannon v. Continental Ins. Co.*,
   920 F. Supp. 566 (D.N.J. 1996) ............................................................................ 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ......................................................................................... 19

*Holtz v. JPMorgan Chase Bank, N.A.*,
   846 F.3d 928 (7th Cir. 2017) ............................................................................... 17

*Howard v. Everex Sys.*,
   228 F.3d 1057 (9th Cir. 2000) ............................................................................... 8

*In re Able Labs. Sec. Litig.*,
   No. Civ. 05-2681, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) .......................... 11, 13

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. 2014) .................................................................. 8, 9

*In re Discovery Labs. Sec. Litig.*,
   No. Civ. 06-1820, 2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) ......................... 21, 22

*In re Donald J. Trump Casino Sec. Litig.*,
   793 F. Supp. 543 (D.N.J. 1992) ............................................................................ 11

*In re Genentech, Inc. Sec. Litig.*,
   No. Civ. 88-4038, 1989 WL 106834 (N.D. Cal. July 7, 1989) ................................... 8

*In re MDC Holdings Sec. Litig.*,
   754 F. Supp. 785 (S.D. Cal. 1990) ........................................................................ 8

*In re Merck & Co., Inc. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005) ............................................................................... 21

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................ 20

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ................................................................................ 3

*In re Stac Electronics Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .............................................................................. 20

*In re Stone & Webster, Inc., Sec. Litig.*,
   253 F. Supp. 2d 102 (D. Mass. 2003) ................................................................. 13

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ....................................................................... 7, 8, 10

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ................................................................ 16

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) .......................................................................... 15

*Kaufman v. I-Stat Corp.*,
   735 A.2d 606 (N.J. Super. Ct. App. Div. 1999) ................................................. 18

*Klawonn v. YA Glob. Invs., L.P.*,
   No. Civ. 10-2108, 2016 WL 5923435 (D.N.J. May 6, 2016) .............................. 12

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2008) ......................................................................... 14, 17

*LLDVF, L.P. v. Dinicola*,
   No. Civ. 09-1280, 2010 WL 3210613 (D.N.J. Aug. 12, 2010) .............................. 7

*Lovallo v. Pacira Pharm., Inc.*,
   No. Civ. 14-6172, 2015 WL 7300492 (D.N.J. Nov. 18, 2015) ................... 20, 21, 22

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ........................................................................................... 14

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*,
  508 U.S. 286 (1993) .................................................................................. 7

*Oaktree Capital Mgmt., L.P. v. KPMG*,
  963 F. Supp. 2d 1064 (D. Nev. 2013) ...................................................... 11

*Pension Comm. v. Banc of Am. Sec., LLC*,
  592 F. Supp. 2d 608 (S.D.N.Y. 2009) ...................................................... 11

*People Express Airlines v. Consol. Rail Corp.*,
  100 N.J. 246 (1985) .................................................................................. 18

*Prudential Ins. Co. of America v. Bank of America, Nat'l Ass'n*,
  Nos. Civ. 13-1586, 14-4242, 2015 WL 502039 (D.N.J. Feb. 5, 2015) ................................... 18

*Roll v. Singh*,
  No. Civ. 07-04136, 2008 WL 3413863 (D.N.J. June 26, 2008) ............... 18

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005) ..................................................................... 13

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ......................................................... 20, 21, 22

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*.,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) ............................................... 7, 8, 10

*Stichting Pensioenfonds ABP v. Merck & Co.*,
  No. Civ. 05-5060, 2012 WL 3235783 (D.N.J. Aug. 1, 2012) .............. 14, 15, 16, 17

*Wallace v. Systems & Computer Technology Corp.*,
  No. Civ. 95-6303, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997) ............... 20

*White v. H&R Block, Inc.*,
  No. Civ. 02-8965, 2004 WL 1698628 (S.D.N.Y. July 28, 2004) ............. 19

*Witriol v. Conexant Sys., Inc.*,
  No. Civ. 04-6219, 2006 WL 3511155 (D.N.J. Dec. 4, 2006) ..................... 8

*WM High Yield Fund v. O'Hanlon*,
  No. Civ. 04-3423, 2005 WL 6788446 (E.D. Pa. May 13, 2005) ............... 12

## Statutes

15 U.S.C. § 78bb ......................................................................... 1, 13, 14, 15

15 U.S.C. § 78r(a) ................................................................................ 7, 11

28 U.S.C. § 1658(b) ................................................................................ 12

N.J.S.A. 49:3-71(c) ................................................................................................... 18

**Regulations**

17 C.F.R. § 240.13a-13(d) ................................................................................. 12, 13

**Other Authorities**

2 Thomas Lee Hazen,
   *The Law of Securities Regulation* § 13.5B (3d ed. 1995) ....................................... 21

## PRELIMINARY STATEMENT

While the Complaints in these six individual actions—*Discovery Global*, *MSD Torchlight*, *BlueMountain*, *Incline Global*, *VALIC*, and *Janus*—largely overlap with allegations made in the securities class action currently pending before the Court (the "Class Action"), Defendants file these Motions to seek dismissal of several claims based on additional allegations and claims not at issue in the Class Action, for the following three reasons.[1]

**Section 18:** With respect to Plaintiffs' claims under Section 18 of the Exchange Act—claims not asserted in the Class Action—Plaintiffs in all six individual actions have not satisfied Section 18's strict standard for pleading reliance, which requires Plaintiffs to specify how each of their purchases were made in reliance on specific statements in Valeant's SEC filings.  Rather, the Complaints simply list purchase dates spanning years in exhibits, without specifying which purchases were made in reliance on which statements in which filings.  Moreover, beyond the failure to provide the required specificity, Plaintiffs in three of the six actions (*Incline Global*, *VALIC*, and *Janus*) purchased Valeant securities ***before*** the earliest SEC filing at issue in these cases, making any reliance allegations impossible.  The Section 18 claims in these three actions also fail because Section 18's statute of repose prohibits Plaintiffs from asserting claims in connection with purchases made more than three years before the actions were filed.

**Negligent Misrepresentation:** Courts in this District have held that the state-law negligent misrepresentation claims contained in all six individual actions are preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA").  SLUSA prohibits

---

[1] Although Plaintiffs have argued that they offer a "much narrower set of facts" than the Class Action, *see, e.g.*, *Janus* ECF No. 15 (Jan. 25, 2017 ltr) at 1, their core legal theory is indistinguishable, and accordingly, Valeant will not repeat any arguments already addressed by this Court's April 28, 2017 Memorandum Opinion.

plaintiffs from bringing state-law securities claims in cases that have been coordinated "for any purpose" with a class action, and courts have held that the assignment of an opt-out action to the same judge overseeing a related class action is enough to find such cases to be "necessarily" coordinated under SLUSA's broad definition.  Even if Plaintiffs' negligent misrepresentation claims were not preempted (which they are), this District has also held that New Jersey common-law negligent misrepresentation claims are not available to securities investors against issuers.

**Purchases After October 2015:**  As the Supreme Court has held, plaintiffs bringing securities fraud claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 may only invoke the "fraud on the market" theory to plead reliance to the extent that they "traded the stock between the time the misrepresentations were made and when the truth was revealed."  Here, the Complaints demonstrate that Valeant's alleged omissions were fully disclosed to the market by the end of October 2015.  Nevertheless, Plaintiffs in four of the six individual actions at issue in these Motions (*Discovery Global*, *BlueMountain*, *VALIC*, and *Janus*) seek to recover damages in connection with purchases that occurred between November 2015 and March 2016.  Third Circuit precedent bars sophisticated investors like Plaintiffs—some of the largest investment firms in the world—from suing to recover for losses on securities purchased after an alleged fraud is disclosed.  Thus, Plaintiffs' securities fraud claims should exclude the post-October 2015 purchases.

*        *        *

For these reasons, as well as those set forth below, Plaintiffs' Section 18 claims, negligent misrepresentation claims, and claims related to purchases after October 2015, should be dismissed with prejudice.

# BACKGROUND[2]

The plaintiffs in these six actions are sophisticated investors who, combined, made nearly 1,400 purchases of Valeant securities between January 2013 and February 2016.

Plaintiffs in these actions are guided by investment advisers with assets under management ranging from hundreds of millions to hundreds of billions of dollars. For example, Plaintiffs in the *Janus* action are Janus Capital Group, Inc. and 23 of its equity and mutual funds (collectively, "Janus Capital") (*Janus* Am. Compl. ¶¶ 18–41.)  With almost $200 billion in assets under management, Janus Capital Group, Inc. is one of the largest and most sophisticated investment firms in the world.  *See* Ex. 1 (Janus Capital Group, Inc. 2016 10-K) at 2.[3]  Plaintiffs in the *Discovery Global* action are four funds advised by Discovery Capital Management, LLC, *Discovery Global* Compl. ¶¶15–19, which has more than $5 billion in holdings. *See* Ex. 2 (Discovery Capital Management, LLC Form 13F-HR) at 2.[4]

Plaintiffs allege that Defendants—Valeant, its former CEO J. Michael Pearson and its former CFO Howard Schiller—(1) failed to disclose that much of Valeant's growth was based on

---

[2] The background herein is drawn from the allegations in the Complaints, which are accepted as true for purposes of these motions to dismiss only, and from other documents properly considered on a motion to dismiss.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).  For ease of reference, citations to Plaintiffs' allegations throughout generally refer only to the *Janus* Amended Complaint.  Unless otherwise noted, the Complaints in the five other actions contain the same allegations.

[3] References to Ex. __ refer to Exhibits to the Declaration of Daniel J. Stujenske, dated June 16, 2017.

[4] *See also MSD Torchlight* Compl. ¶¶ 15–17; Ex. 3 (MSD Partners, L.P. Form ADV) at 7 ($7.43 billion under management); *BlueMountain* Compl. ¶¶ 18–26; Ex. 4 (BlueMountain Capital Management, LLC Form ADV) at 11 ($22.7 billion under management); *Incline Global* Compl. ¶¶ 15–17; Ex. 5 (Incline Global Management LLC Form ADV) at 8 ($844 million under management); *VALIC* Compl. ¶¶ 18–26; Ex. 6 (SunAmerica Asset Management, LLC Form ADV) at 10 ($68.3 billion under management); Ex. 7 (Variable Annuity Life Insurance Company Form ADV) at 8 ($27.8 billion under management).

price increases and was therefore not "organic" and, (2) concealed material facts concerning Valeant's relationship with Philidor.  (*Janus* Am. Compl. ¶¶ 1–2.)  Some plaintiffs further allege that Defendants artificially inflated Valeant's earnings as part of their concealment of Valeant's relationship with Philidor.

On these Motions, Valeant will not repeat the underlying factual allegations that were essentially addressed by this Court in its April 28, 2017 Memorandum Opinion in the Class Action.  Rather, Valeant notes only those pertinent to the distinct arguments it makes with respect to Section 18, negligent misrepresentation, and purchases made after October 2015.

Plaintiffs allege that "Valeant represented to investors that the main driver of [its] growth was organic volume increases in drug sales, and not price hikes on the medications themselves." (*Janus* Am. Compl. ¶ 119.)  Plaintiffs concede, however, that an October 4, 2015 *New York Times* article "apprised [investors] that Valeant's steep revenue growth might be driven by something other than organic sales."  (*Janus* Am. Compl. ¶ 142).  That article reported that "Valeant's habit of buying up existing drugs and raising prices aggressively, rather than trying to develop new drugs, has also drawn the ire of lawmakers and helped stoke public outrage." (*Janus* Am. Compl. ¶ 142; *see also* Ex. 8 (Andrew Pollack & Sabrina Tavernise, *Valeant's Drug Price Strategy Enriches It, but Infuriates Patients and Lawmakers*, N.Y.TIMES, Oct. 4, 2015).) The summary of Valeant's business practices in that article was not the result of a deep investigation into Valeant—it was simply based on a review of Valeant's public statements.  For example, the article clarifies that Valeant's CEO had discussed the importance of Valeant's pricing decisions to shareholders as early as April of 2015:

> Mr. Pearson, a former McKinsey & Company consultant, has said he has a duty to shareholders to wring the maximum profit out of each drug. And in some cases old neglected drugs sell for far less than newer drugs for the same diseases. If "products are sort of mispriced and there's an opportunity, we will

act appropriately in terms of doing what I assume our shareholders would like us to do," he told analysts in a conference call in April.

Ex. 8 at 3.  Additionally, the *New York Times*' conclusion that Valeant was "known" for its controversial practices was premised in part on Valeant's "regulatory filing for the second quarter [in which] Valeant said that its growth in the United States and other developed markets *'was driven primarily by price' not by increased volume*."  (*Id.* at 6.) This was not a new disclosure; rather, it was a disclosure that Valeant had made to investors *every quarter between April 2013 and June 2015*.[5]  In other words, the *New York Times* understood Valeant's disclosures, which were made as early as Valeant's 2013 10-K, as unambiguously informing investors of the sources of Valeant's growth.

The Complaints also allege that "Defendants hid Philidor's existence and Valeant's ties to Philidor" (*Janus* Am. Compl. ¶ 4.)  The *Janus*, *BlueMountain*, and *VALIC* complaints further allege that Defendants artificially inflated Valeant's earnings as part of their concealment of Valeant's relationship with Philidor.  (*Janus* Am. Compl. ¶¶ 6–7; *BlueMountain* Compl. ¶¶ 6–7; *VALIC* Compl. ¶¶ 6–7).  The Complaints also make clear, however, that this information was announced no later than October 2015.

On October 19, 2015, for example, Valeant announced third quarter earnings and disclosed details about its relationship with Philidor, including Valeant's option to purchase Philidor and the consolidation of Philidor's financials.  (*Janus* Am. Compl. ¶ 149.)  On October 26, 2015, Valeant filed its Form 10-Q for the third quarter of 2015 and released a comprehensive 90-page PowerPoint presentation on Philidor.  (*Janus* Am. Compl ¶ 161; Ex. 18 (Valeant 10-Q

---

[5] *See* Ex. 9 (Valeant 2013 10-K) at 35; Ex. 10 (Valeant 10-Q 2Q 2013) at 42; Ex. 11 (Valeant 10-Q 3Q 2013) at 53; Ex. 12 (Valeant 10-Q 1Q 2014) at 38; Ex. 13 (Valeant 10-Q 2Q 2014) at 44–45; Ex. 14 (Valeant 10-Q 3Q 2014) at 47; Ex. 15 (Valeant 2014 10-K) at 34; Ex. 16 (Valeant 10-Q 1Q 2015) at 34; Ex. 17 (Valeant 10-Q 2Q 2015) at 39.

3Q 2015) at 38.; Ex. 19 (Oct. 26, 2015 Presentation).)  Valeant disclosed Philidor's limited

contribution to net revenue—less than 1% before 2015 and approximately 6% of net revenue for

the first nine months of 2015 **combined** (peaking at 7% of net revenue only in the third quarter of

2015). (Ex. 20 (Valeant 10-K 2015) at 44; Ex. 18 (Valeant 10-Q 3Q 2015) at 13.) Valeant also

announced the establishment of an ad hoc committee supported by independent advisors "to

review allegations related to the Company's business relationship with Philidor and related

matters."  (Ex. 18 (Valeant 10-Q 3Q 2015) at 38.)  Allegations had been made several days

earlier by Citron Research ("Citron")—a short-seller with a financial interest in harming

investors like Plaintiffs by causing Valeant's stock to drop.  Citron had issued a report accusing

Valeant of using Philidor to book "phantom sales or stuff the channel, and avoid scrutiny from

the auditors." (*Janus* Am. Compl. ¶ 154; Ex. 21 (Citron Report) at 3, 5.)  These allegations of

fraudulent accounting were repeated throughout the financial press. *See, e.g.*, Ex. 22 (Antoine

Gara, *Valeant Plunges 30% After Short Seller Citron Research Makes Fraud Allegation*, FORBES

(Oct. 21, 2015)).

On October 28, 2015, moreover, the *Wall Street Journal* reported on Philidor's purported

sales tactics, calling them "highly questionable practices."  (*Janus* Am. Compl. ¶ 164; Ex. 23

Jonathan Rockoff and Jeanne Whalen, *Pharmacy's Sales Tactics Disclosed*, WALL ST. J., Oct.

28, 2015.)  Within a day, the country's three largest pharmacy benefit managers announced that

they would no longer work with Philidor. (*Janus* Am. Compl. ¶¶ 165, 167.)  On October 30,

2015, Valeant also announced that it was severing ties with Philidor.  (*Janus* Am. Compl. ¶¶ 168,

213; Ex. 24 (Valeant, Press Release (Oct. 30, 2015)).)  In a statement released by Valeant,

Pearson explained that "the newest allegations about activities at Philidor raise additional

questions about the company's business practices . . . .  We have lost confidence in Philidor's

ability to continue in a manner that is acceptable to Valeant and the patients and doctors we serve." (*Id.*)

After this information reached the market, plaintiffs in four of these actions purchased Valeant stock on 201 separate occasions. (*Discovery Global* Compl. Exs. A–D; *BlueMountain* Compl. Exs. A–H; *VALIC* Compl. Exs. A–F, H, J–Q, S–U; *Janus* Am. Compl. Exs. H, P, T.)

## ARGUMENT

## I.   PLAINTIFFS' SECTION 18 CLAIMS FAIL IN ALL SIX INDIVIDUAL ACTIONS

Count III of each Complaint asserts a claim under Section 18 of the Exchange Act. Section 18 is "a narrow and seldom invoked provision." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*., 33 F. Supp. 3d 401, 439 (S.D.N.Y. 2014). It "creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC pursuant to the Exchange Act." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006) (citing 15 U.S.C. § 78r(a)). The PSLRA's heightened pleading requirements apply to Section 18. *See LLDVF, L.P. v. Dinicola*, No. Civ. 09-1280, 2010 WL 3210613, at *3 (D.N.J. Aug. 12, 2010).[6]

---

[6] Despite the Complaints' characterizations of Section 18 claims as "negligence-based," (*Janus* Am. Compl. at 83), Section 18 liability can ultimately only be imposed on "defendants who have violated the securities law *with scienter*." *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 296 (1993)(emphasis added). Thus, although plaintiffs asserting a Section 18 claim need not plead scienter, *Suprema*, 438 F.3d at 256, 283, a defendant's "good faith is an absolute defense" to Section 18 liability. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 200 (1976) (citing 15 U.S.C. § 78r).

A.     **Plaintiffs In All Six Actions Fail To Meet Section 18's Stringent Standard For Pleading Reliance**

On a Section 18 claim, courts require "'a purchaser's *actual reliance* on the fraudulent statement under § 18(a), as opposed to the constructive reliance, or fraud-on-the-market theory available under § 10(b).'" *Suprema*, 438 F.3d at 283 (quoting *Howard v. Everex Sys.*, 228 F.3d 1057, 1063 (9th Cir. 2000)).  Unlike Section 10(b)'s standard for pleading reliance, "Section 18 requires that plaintiffs allege *actual* reliance on specific statements in covered Exchange Act filings." *Special Situations Fund III*, 33 F. Supp. at 440 (emphasis added) (citation omitted). That critical difference exists because "the courts, not Congress, created the implied private cause of action under Rule 10b-5" and have therefore "been free to redefine [the reliance] requirement in order to promote Rule 10b-5's objectives." *In re Genentech, Inc. Sec. Litig.*, No. Civ. 88-4038, 1989 WL 106834, at *5 (N.D. Cal. July 7, 1989); *see also In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 798 (S.D. Cal. 1990) ("In contrast [with § 10(b)], Congress created the express reliance requirement in § 18.  Courts have consistently interpreted the section to require actual reliance.").

Applying *Suprema*, courts dismiss Section 18 claims where "the allegations of reliance are cursory and general, lacking the specificity that the Third Circuit [in *Suprema*] requires to state a claim . . . [and] fail to plead facts probative of actual reliance on specific false statements." *Witriol v. Conexant Sys., Inc.*, No. Civ. 04-6219, 2006 WL 3511155, at *7 (D.N.J. Dec. 4, 2006); *see also Special Situations Fund III*, 33 F. Supp. 3d at 444 (dismissing Section 18 claims where plaintiffs failed to "identify . . . *specific transactions* that ensued as a result of Plaintiffs' purported 'eyeball' reliance on [the filings]."); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 309–10 (S.D.N.Y. 2014) (dismissing Section 18 claims where plaintiffs failed to "link [their] review of any particular statements in [the 10-K] or

8

any other document to any actual purchases of Bear Stearns securities *and [did] not identify a particular transaction that it allegedly made in reliance on the document or any other document*.") (emphasis added).

Here, Plaintiffs do not even attempt to satisfy this standard; the Complaints simply list purchase dates spanning years in exhibits, without specifying which purchases were made in reliance on which statements in which filings. *See Janus* Am. Compl. and Exs. A–T; *Discovery Global* Compl. and Exs. A–D; *MSD Torchlight* Compl. and Exs. A–B; *BlueMountain* Compl. and Exs. A–H; *Incline Global* Compl. and Exs. A–B; *VALIC* Compl. and Exs. A–V. For example, the *VALIC* Complaint identifies 404 purchases made over more than three years on Exhibits A through V, and the *Janus Capital* Amended Complaint lists 540 purchases spanning more than three years in Exhibits A through T. Section 18 allegations based on purchases that "occurred over a year-long period" and where a plaintiff "does not identify a particular transaction that it allegedly made" in reliance on filed documents do not state a claim. *In re Bear Stearns*, 995 F. Supp. 2d at 309. Indeed, the Complaints' blanket allegations that investment analysts or advisors "actually relied upon information contained in [all of Valeant's filings] in making *each* purchase set forth on" the exhibits (*Janus* Am. Compl. ¶ 334) (emphasis added) simply thumb their noses at the specificity requirement, and are exactly the type of "generic" allegations rejected by courts. *See In re Bear Stearns*, 995 F. Supp. 2d at 309 ("[Plaintiff's] generic response that 'every . . . purchase of Bear securities was in reliance on the specific misrepresentations and omissions identified in the Complaint' is not sufficiently particularized."). The generic nature of the allegations in these cases is highlighted by the fact that each of the Complaints assert identical boilerplate reliance allegations differentiated only by

the alleged purchase dates.  That is fatal to the Section 18 claims.  *See Special Situations Fund III*, 33 F. Supp. 3d at 444.

Nor are these blanket allegations of reliance, for every purchase, on every filing, remotely plausible.  *Suprema* describes Section 18's reliance requirement as "transaction *causation*," i.e., a showing the misrepresentation actually caused the purchase.  438 F.3d at 275 (citation omitted).  Plaintiffs' allegations would require this Court to assume that investment analysts at some of the country's largest and most sophisticated funds purchased Valeant stock *as a result of* generic representations about accounting, internal controls, and SOX certifications required for every publicly traded security, or *as a result* of portions of SEC filings made years earlier.  For example, the *Janus Capital* Amended Complaint's blanket allegation would include the assertion that when Plaintiff purchased Valeant common stock on February 24, 2016 (*Janus* Am. Compl. Ex. P), it did so in reliance on a representation that Valeant's *2014* financial statements were prepared in accordance with GAAP (*Janus* Am. Compl. ¶ 330), or a certification from the third quarter of 2014 concerning Valeant's internal controls *at that time* (*Janus* Am. Compl. ¶ 328).

Indeed, the *Incline Global*, *VALIC*, and *Janus* Complaints' blanket reliance allegations are not just implausible—they are ***impossible***.  For example, Janus Capital alleges that "[p]rior to Plaintiffs purchasing Valeant securities, Janus's Equity Research Analyst and Janus's Fixed Income Research Analyst actually read, reviewed and relied upon Valeant's 2013 10-K." (*Janus* Am. Compl. ¶ 327.)  Yet Exhibits A through T of the Amended Complaint, which list the dates of Plaintiffs' alleged securities purchases, include 138 purchases made prior to February 28, 2014—the date the 2013 10-K was filed with the SEC.[7]  Even absent Section 18's uniquely strict

---

[7] *See also Incline Global* Compl. ¶ 229; *VALIC* Compl. ¶ 310.  Exhibit A to the *Incline Global* Complaint identifies four purchases made before the 2013 10-K was filed on February 28, 2014, and Exhibits A through V of the *VALIC* Complaint identify 102 such purchases.

10

reliance pleading standard, Courts routinely dismiss securities claims when the purchases occurred prior to the availability of the SEC filings allegedly relied upon.  *See*, *e.g.*, *Gannon v. Continental Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) (dismissing 10b-5 claim as to shares purchased prior to annual report's filing because plaintiff could not have relied on the report when making such purchases) (citing *In re Donald J. Trump Casino Sec. Litig.*, 793 F. Supp. 543, 565 (D.N.J. 1992), *aff'd*, 7 F.3d 357 (3d Cir. 1993)); *Dexia SA/NV v. Deutsche Bank AG*, No. Civ. 11-5672, 2013 WL 98063, at *5 (S.D.N.Y. Jan. 4, 2013) (holding that plaintiffs cannot plead reliance on offering documents when they invested "before the [offering documents] were even issued"); *Pension Comm. v. Banc of Am. Sec.*, *LLC*, 592 F. Supp. 2d 608, 629 & n.144 (S.D.N.Y. 2009) (holding that plaintiffs cannot establish reliance on statements not received before investment).

## B.     Plaintiffs Assert Claims Barred By Section 18's Statute Of Repose

Section 18 contains a three-year statute of repose.  *See* 15 U.S.C. § 78r(c) (Section 18 claims must be filed "within three years after such cause of action accrued.").  A statute of repose "provides a fresh start or freedom from liability" by effecting "a legislative judgment that a defendant should be free from liability after [a] legislatively determined period of time."  *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2179, 2183 (2014).  Section 18 causes of action accrue at the time the securities are purchased or sold.  Accordingly, any Section 18 claims for a purchase made more than three years prior to a Complaints' filing are barred by the statute of repose.  *See Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1092 (D. Nev. 2013) (dismissing claims with prejudice); *see also id.* at 1082 n.14.

Courts in the Third Circuit have unanimously rejected an argument that a longer statute of repose included in the Sarbanes-Oxley Act applies to Section 18 claims.  *See In re Able Labs. Sec. Litig.*, No. Civ. 05-2681, 2008 WL 1967509, at *23 (D.N.J. Mar. 24, 2008) ("This Court is

persuaded by courts holding that the SOX statute of limitations is inapplicable to claims under §

18 of the Exchange Act."); *WM High Yield Fund v. O'Hanlon*, No. Civ. 04-3423, 2005 WL

6788446, at *12 (E.D. Pa. May 13, 2005) ("Because Section 18 does not require proof of fraud,

Sarbanes-Oxley does not extend the statute of limitations and Plaintiffs' Section 18 claims . . .

are barred by the applicable three year limitations period."); *Klawonn v. YA Glob. Invs., L.P.*, No.

Civ. 10-2108, 2016 WL 5923435, at *7 (D.N.J. May 6, 2016) ("Section 18 [claims] must be

brought within one year after discovery of the facts underlying the violation, and in any event

within three years after the violation.").[8]  The Complaints likewise acknowledge that a three-year

statute of repose is applicable.  *See Janus* Am. Compl. ¶ 350 ("Plaintiffs have brought this claim

. . . within three years of the accrual of this cause of action.  Consequently, this action is

timely.").  Thus, because 169 of the *Incline Global*, *VALIC*, and *Janus* purchases of Valeant

securities occurred more than three years prior to the filing of those actions, Section 18 claims in

connection with those purchases must be dismissed.  *See Incline Global* Compl. Ex. A (alleging 1

purchase on October 17, 2013); *VALIC* Compl. Exs. B–E, M, O, P, T–V (alleging 75 purchases

between January 22, 2013 and October 9, 2013); *Janus* Am. Compl. Exs. A–C, E–I, L–N, P–S

(alleging 93 purchases between January 8, 2013 and September 26, 2013).[9]

---

[8] The Second Circuit, on the other hand, has held that Section 18 claims are subject to a five-year statute of repose pursuant to the Sarbanes-Oxley Act's extension of the statue of repose for "certain 'private right[s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance.'"  *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 398, 405 (2d Cir. 2016) (quoting 28 U.S.C. § 1658(b)).

[9] Additionally, the alleged misstatements in Valeant's quarterly reports described in the *BlueMountain*, *VALIC*, and *Janus* Complaints are subject to a safe harbor exempting "financial information" furnished in 10-Qs from Section 18 liability.  SEC regulations are clear: "The financial information required by Part I of Form 10-Q shall not be deemed to be 'filed' for the purpose of Section 18 of the Act . . . ."  17 C.F.R. § 240.13a-13(d).  "Thus, plaintiffs may not proceed with a Section 18 claim based on any disclosures contained in [defendant]'s quarterly reports on Form 10–Q."  *In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 135 (D.

## II.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL IN ALL SIX INDIVIDUAL ACTIONS

Count IV of each the Complaints asserts a claim of negligent misrepresentation under New Jersey common law.  These claims are preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA").  Even if they were not preempted, the Complaints fail to state negligent misrepresentation claims because, among other things, New Jersey common-law negligent misrepresentation claims do not cover lawsuits by securities investors like Plaintiffs against issuers like Valeant.

### A.    SLUSA Preempts Plaintiffs' Negligent Misrepresentation Claims

"By 1998, Congress concluded that plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions in state rather than federal court. SLUSA was designed to close this perceived loophole by authorizing . . . federal preemption of certain state court securities class actions."  *Rowinski v. Salomon Smith Barney Inc*., 398 F.3d 294, 298 (3d Cir. 2005).  "Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards."  *Id.*

To further that goal, SLUSA "provides that '[n]o covered class action' based on state law and alleging 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security' 'may be maintained in any State or Federal court by any private

---

Mass. 2003) (citing 17 C.F.R. § 240.13a-13(d)); *see also In re Able Labs.*, 2008 WL 1967509, at *25 ("SEC regulations specifically exempt certain filings from the provisions of § 18—such as . . . part I of Form 10-Q. . . ."). As an end-run around the safe harbor, the *BlueMountain*, *VALIC*, and *Janus* Plaintiffs also seek to impose Section 18 liability for the certifications in the 10-Qs signed by Pearson and Schiller pursuant to Section 302 of SOX.  Although those certifications are furnished as exhibits to Form 10-Q and therefore not located in Part I, those certifications simply assert that the Financial Information concerning "controls and procedures" in Part I was, to the best of the signor's knowledge, correct.  *See* Ex. 14 (Valeant 10-Q 3Q 2014) at Exhibit 31.1; Ex. 16 (Valeant 10-Q 1Q 2015) at Exhibit 31.1; Ex. 17 (Valeant 10-Q 2Q 2015) at Exhibit 31.1; Ex. 18 (Valeant 10-Q 3Q 2015) at Exhibit 31.1.

party.'"  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 74 (2006) (quoting

15 U.S.C. § 78bb(f)(1)(A)).  Thus, a claim is preempted by SLUSA where it "(1) make[s] use of

a procedural vehicle akin to a class action, and (2) allege[s] a misrepresentation or deceptive

device in connection with a securities trade."  *LaSala v. Bordier et Cie*, 519 F.3d 121, 128 (3d

Cir. 2008).

### 1.     These Actions Constitute A "Covered Class Action" Under SLUSA

A "covered class action" includes "any group of lawsuits filed in or pending in the same

court and involving common questions of law or fact, in which (I) damages are sought on behalf

of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a

single action for any purpose."  15 U.S.C. § 78bb(f)(5)(B).  Both criteria are met here.

A case from this district, *Stichting Pensioenfonds ABP v. Merck & Co.*, No. Civ. 05-

5060, 2012 WL 3235783 (D.N.J. Aug. 1, 2012), is directly on point.  *Stichting* addressed an

institutional investor's securities action against a pharmaceutical company that was filed on the

heels of a "largely identical" class action complaint.  *Id.* at *1.  Like the Complaints here, the

*Stichting* opt-out complaint included negligent misrepresentation claims absent from the class

action complaint.  *Id.* at *13.  Applying SLUSA, the *Stichting* court found that the opt-out

complaint was "certainly one of a group of lawsuits which assert common questions of law and

fact and which together seek damages on behalf of more than 50 persons" when considering the

related class action and other individual actions pending before the same judge.  *Id.* at *14.  The

same is true here: these Actions are six of ten opt-out actions before this Court alleging, as the

Class Action alleges, that Valeant made material misrepresentations or omissions about Philidor

and related matters in violation of the Exchange Act.  The individual actions alone seek damages

on behalf of more than 50 plaintiffs.

The *Stichting* court also held that the "actions were 'joined, consolidated *or* otherwise proceed[ing] as a single action for any purpose' so as to meet SLUSA's covered class action definition." *Id.* (emphasis in original) (quoting 15 U.S.C. § 78bb(f)(5)(B)(ii)(II)). The court rejected plaintiff's argument that formal coordination was required to trigger SLUSA's statutory criteria. *See id.* ("[T]o interpret this language as covering only lawsuits that are formally 'joined or consolidated' would be to render [SLUSA]'s description of the latter category of covered actions—lawsuits that 'otherwise proceed as a single action for any purpose'—entirely redundant.") (quoting *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375 (S.D.N.Y. 2010)); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1347 (11th Cir. 2008) (emphasizing that "consolidation for *any* purpose" is sufficient under the statute) (emphasis added). Rather, SLUSA's "plain and broad language" defining the level of coordination "encompasses actions which are coordinated for pre-trial purposes . . . ." *Stichting*, 2012 WL 3235783 at *14.

*Stichting* found the actions to be coordinated because, among other things, (1) all of the actions pending in the District were consolidated before the same judge, and (2) the individual action and the class action "relate[d] to exactly the same subject matter." *Id.* at *16. The same is true here. After the filing of the Class Action, each individual action was subsequently assigned to this Court. Indeed, Plaintiffs themselves deemed these cases to be "related" to the Class Action such that they should proceed before this Court. *See Janus* ECF No. 1-21 (Civil Cover Sheet).[10] The *Amorosa* decision, upon which *Stichting* heavily relied, made clear that this designation *alone* was sufficient to satisfy SLUSA's coordination requirement. *See Amorosa*,

---

[10] *See also Discovery Global* ECF No. 1-5 (Civil Cover Sheet); *MSD Torchlight* ECF No. 1-3 (Civil Cover Sheet); *BlueMountain* ECF No. 1-9 (Civil Cover Sheet); *Incline Global* ECF No. 1-9 (Civil Cover Sheet); *VALIC* ECF No. 1-23 (Civil Cover Sheet).

682 F. Supp. 2d at 376 ("The assignment of [the individual plaintiff's] related case to [the same judge handling the related class action], where it would necessarily be handled in coordination with the [other related] cases . . . is enough to make [the] action a 'covered class action' [under] SLUSA."). Further, Plaintiffs stipulated to a briefing schedule identical to and "consistent with" the schedule in four "related actions," namely four other opt-out actions. *See Janus* ECF No. 39 (Stipulation and Order).[11] Additionally, these cases concern the same subject matter. Virtually every allegedly false or misleading statement identified in these cases and the other individual actions is at issue in the Class Action. Accordingly, SLUSA's requirement that the cases be coordinated for any purpose is satisfied because "[t]he . . . Individual Actions . . . run parallel to, and [are] truly in many regards peripheral to the Class Action pending before this Court." *Stichting*, 2012 WL 3235783, at *17; *see also Amorosa*, 682 F. Supp. 2d at 376.

## 2. These Actions Allege Misrepresentations In Connection With Securities Trades

Plaintiffs' negligent misrepresentation claims are predicated on allegations that "Defendants . . . made misrepresentations that they knew, or should have known, to be false in order to induce Plaintiffs to purchase Valeant securities." *Janus* Am. Compl. ¶ 353. Thus, Plaintiffs' claims unquestionably allege a misrepresentation or deceptive device in connection with a securities trade, notwithstanding Plaintiffs' attempt to disclaim allegations of fraud. *See In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 769–70 (S.D.N.Y. 2003) ("Nothing in [SLUSA] suggests that it bars only state law claims that plead a certain level of scienter. In fact, the legislative history and statutory scheme reveal that the preemption provision is part of a far-

---

[11] *See also Discovery Global* ECF No. 31 (Stipulation and Order); *MSD Torchlight* ECF No. 31 (Stipulation and Order); *BlueMountain* ECF No. 31 (Stipulation and Order); *Incline Global* ECF No. 32 (Stipulation and Order); *VALIC* ECF No. 32 (Stipulation and Order).

reaching Congressional effort . . . to preempt litigation filed in state court as part of an effort to circumvent . . . the [PSLRA]"); *see also Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930 (7th Cir. 2017) ("Every . . . circuit that has addressed the question . . . has held that a plaintiff cannot sidestep SLUSA by omitting allegations of scienter or reliance.").

Accordingly, because Plaintiffs' negligent misrepresentation "claim[s] contain[] both the class-action and the securities-trade ingredients, [they] must be dismissed."  *LaSala*, 519 F.3d at 129.

### B.     Even If Not Preempted, Plaintiffs Fail To State Negligent Misrepresentation Claims

"Under New Jersey law, the elements of a negligent misrepresentation claim are: (1) defendant negligently made a false communications of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury." *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008).  As with a Section 18 claim, a negligent misrepresentation claim requires a pleading of actual reliance on specific statements in SEC documents for each transaction at issue.  *See Stichting*, 2012 WL 3235783, at *17 n.11 ("Because the fraud-on-the-market theory of reliance is not available under New Jersey law, a plaintiff asserting a fraud or misrepresentation claim must allege that [it] in fact received and considered public statements made by a defendant and was deceived by those statements and/or omissions.").  Plaintiffs' failure to plead reliance under Section 18 is also fatal to their state law claims.

An even more fundamental flaw in Plaintiffs' negligent misrepresentation claims is that

New Jersey courts do not recognize such claims for securities investors.[12]   "A plaintiff seeking to

recover for negligent misrepresentation must plead that the defendant owed it a duty of care."

*Roll v. Singh*, No. Civ. 07-04136, 2008 WL 3413863, at *20 (D.N.J. June 26, 2008).   A recent

decision from this District demonstrates that this is an impossible hurdle for Plaintiffs to clear.

In *Prudential Ins. Co. of America v. Bank of America, Nat'l Ass'n*, Nos. Civ. 13-1586, 14-4242,

2015 WL 502039 (D.N.J. Feb. 5, 2015), residential mortgage-backed securities ("RMBS")

investors brought negligent misrepresentation claims against the issuers of those securities.   The

court noted that, in accord with § 552 of the Restatement (Second) of Torts, the New Jersey

Supreme Court has limited the class of plaintiffs who can sue for negligent misrepresentation "to

***particular plaintiffs*** . . . comprising an ***identifiable class*** with respect to whom defendant knows

or has reason to know are likely to suffer such damages from its conduct."   *Id.* at *5–6 (quoting

*People Express Airlines v. Consol. Rail Corp.*, 100 N.J. 246, 263–64 (1985)) (emphasis added).

The *Prudential* court therefore dismissed the investors' negligent misrepresentation claims,

recognizing that because "the class of all potential RMBS investors" was "literally limitless," the

investors were not members of an "identifiable class" that was "particularly foreseeable."   *Id.* at

*6.   That holding applies with even greater force here.   While only sophisticated investors are

generally potential investors in RMBS, the class of potential investors in Valeant common stock

is even broader, encompassing sophisticated investment funds like Plaintiffs as well as individual

investors.   Thus, the Complaints' negligent misrepresentation claims must be dismissed.   *See id.*;

*see also Kaufman v. I-Stat Corp.*, 735 A.2d 606 (N.J. Super. Ct. App. Div. 1999) *rev'd on other*

---

[12] Investors in New Jersey are not without recourse under state law: New Jersey's "Blue Sky Law," the New Jersey Uniform Securities Law, governs the offer, sale, or purchase of any security in the state and creates a private remedy for actions for deceit.   N.J.S.A. 49:3-71(c).

*grounds*, 165 N.J. 94 (2000) ("we decline to adopt a rule of liability which would create expansive potential liability for negligent misrepresentations that may affect the price of securities.").

### III. PLAINTIFFS IN *DISCOVERY GLOBAL*, *BLUEMOUNTAIN*, *VALIC*, and *JANUS* CANNOT RELY ON THE "FRAUD ON THE MARKET" PRESUMPTION FOR PURCHASES MADE AFTER OCTOBER 30, 2015

Count I of four complaints—*Discovery Global*, *BlueMountain*, *VALIC*, and *Janus*—is overbroad, even in light of the Court's April 28, 2017 Memorandum Opinion in the Class Action. Reliance is an element of securities fraud claims, and these Plaintiffs "intend to rely upon the presumption of reliance established by the fraud-on-the-market doctrine." (*Janus* Am. Compl. ¶ 262.) Critically, that doctrine is only applicable to the extent that Plaintiffs "traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014); *see also Janus* Am. Compl. ¶ 262.[13] The Complaints, Valeant's filings, and news reports make clear that the "truth" was revealed by the end of October 2015.

The fraud on the market theory's premise—that a stock's market price reflects "'*all* publicly available information'"—demonstrates that the market must also "have absorbed all the information available from the articles published in newspapers from coast to coast and the press releases and SEC filings of [Valeant]." *White v. H&R Block, Inc.*, No. Civ. 02-8965, 2004 WL 1698628, at *13 (S.D.N.Y. July 28, 2004) (quoting *Basic v. Levinson*, 485 U.S. 224, 246 (1988)). Thus, a "truth on the market defense can . . . be granted on a motion to dismiss where the company's SEC filings or other documents disclose the very information necessary to make their

---

[13] Valeant reserves the right to challenge all Plaintiffs' general reliance on the "fraud on the market" theory at a later stage of this case.

public statements not misleading." *Wallace v. Systems & Computer Technology Corp.*, No. Civ. 95-6303, 1997 WL 602808, at *10 (E.D. Pa. Sept. 23, 1997) (citing *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996)); *see also In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) ("The presumption of reliance created by the fraud on the market theory can be rebutted . . . [w]hen information 'credibly enters the market and dissipates the effects of the misstatements[.]'") (quoting *Basic*, 485 U.S. at 248).

The Third Circuit's decision in *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000), is on point.  In *Semerenko*, defendants were accused of misrepresenting their financial condition in connection with a proposed acquisition.  Critically, in the middle of the proposed class period, defendants disclosed that due to the discovery of "potential accounting irregularities" a committee of the company's board of directors had engaged outside advisors "to perform an independent investigation." *Id.* at 170.  That investigation later resulted in the issuance of a restatement by the company. *Id.* at 171.  Parsing the allegations, the Third Circuit ruled that although plaintiffs had sufficiently pled reliance *before* the announcement of the independent investigation, the announcement "immediately rendered the prior misrepresentations . . . thereafter immaterial as a matter of law," and neither the market nor putative class therefore could have reasonably relied upon prior misstatements. *Id.* at 181.

Cases in the Third Circuit decided after *Semerenko* have also found that the truth on the market defense is appropriate on a motion to dismiss.  In *Lovallo v. Pacira Pharm., Inc.*, the defendant pharmaceutical company was accused of making materially misleading disclosures concerning its marketing of a drug for non-FDA approved uses.  No. Civ. 14-6172, 2015 WL 7300492, at *2–3 (D.N.J. Nov. 18, 2015).  Judge Walls dismissed the claims, finding that although there were misstatements and omissions, the pharmaceutical company's later

20

disclosures "demonstrate[d] that true information was transmitted to the public with the degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by [any prior] representations." *Id.* at *9–10. Specifically, plaintiffs' claims ceased to be viable once the company's securities filings explained both the scope of the FDA's approval and the drug's uses. The court rejected plaintiffs' arguments that dismissal was inappropriate because the "true disclosures [were] buried among other statements," finding that investors nevertheless should have been aware of them. *Id.* Likewise, in *In re Discovery Labs. Sec. Litig.*, plaintiffs alleged that a biotechnology company failed to adequately disclose in its SEC filings that its manufacturing partner (which it later acquired) had a history of compliance problems. No. Civ. 06-1820, 2006 WL 3227767, at *1–2 (E.D. Pa. Nov. 1, 2006). The court dismissed plaintiffs' claims based on the "truth on the market defense," finding that although "at least some of plaintiffs' claims allege misleading omissions," there was "sufficient public disclosure to . . . invoke an assumption that the stock price reflected any adjustment in corporate value [that defendant's manufacturing] relationship caused." *Id.* at *10–11. The court reached this holding even though it was the FDA, not defendant itself, which publicized the compliance problems. *Id.*[14]

This precedent—all of which granted dismissal on the pleadings—reflects the fact that "as compared to the other courts of appeals, [the Third Circuit] has one of the clearest commitments to the efficient market hypothesis" underpinning the "fraud on the market" theory of reliance. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005). Consistent

---

[14] The fact that *Lovallo* and *In re Discovery Labs* discuss the truth on the market defense in the context of materiality and not reliance is a distinction without a difference. *See Semerenko*, 223 F.3d at 180 ("The reliance requirement is a corollary of materiality.") (quoting 2 Thomas Lee Hazen, *The Law of Securities Regulation* § 13.5B, at 527 (3d ed. 1995)).

with that precedent, this Court should find that the "truth was revealed" by no later than October 30, 2015.  By that point, Valeant itself had disclosed, among other things, (1) its ties to Philidor, (2) that it was terminating its relationship with Philidor, (3) that it had lost confidence in Philidor's practices, and (4) that it was conducting an internal investigation of serious allegations concerning Philidor and Valeant's relationship and related accounting.  (*Janus* Am. Compl. ¶¶ 168, 213; Ex. 24 (Valeant, Press Release (Oct. 30, 2015)).)  Those announcements are directly analogous to the announcement that the Third Circuit found to foreclose reasonable reliance in *Semerenko*.  Likewise, Valeant's pricing practices had been discussed at length in its public filings, and the media.  This point is conceded in the Complaints' acknowledgements that the October 4, 2015 *New York Times* article (Ex. 8) "apprised [investors] that Valeant's steep revenue growth might be driven by something other than organic sales." (*Janus* Am. Compl. ¶ 142.)  Indeed, Plaintiffs in the *MSD Torchlight* action here explain that MSD liquidated its "entire position in Valeant common stock" by October 20, 2015, in view of "the partial disclosures alleged." (*MSD Torchlight* Compl. ¶ 110.).  Nevertheless, *Discovery Global*, *BlueMountain*, *VALIC*, and *Janus* Plaintiffs purchased Valeant securities 201 separate times between November 2, 2015 and March 15, 2016.[15]  The law within the Third Circuit does not permit recovery on these purchases made after the "truth" was revealed.  *See Semerenko*, 223 F.3d at 181; *Lovallo*, 2015 WL 7300492, at \*9–10; *In re Discovery Labs*, 2006 WL 3227767, at \*11.  Accordingly, the *Discovery Global*, *BlueMountain*, *VALIC*, and *Janus* Plaintiffs' claims under Count I must be found to exclude those purchases.

---

[15] *See Discovery Global* Compl. Exs. A–D (alleging 4 purchases on December 8, 2015); *BlueMountain* Compl. Exs. A–H (alleging 91 purchases between November 9, 2015 and March 9, 2016); *VALIC* Compl. Exs. A–F, H, J–Q, S–U (alleging 74 purchases between November 2, 2015 and March 15, 2016); *Janus* Am. Compl. Exs. H, P, T (alleging 32 purchases between November 2, 2015 and February 24, 2016).

**CONCLUSION**

Defendant Valeant Pharmaceuticals International, Inc. respectfully requests that the Court dismiss Counts III and IV of each of the Complaints.  Additionally, the scope of Count I in the *Discovery Global*, *BlueMountain*, *VALIC*, and *Janus* actions should be limited to exclude Plaintiffs' purchases of Valeant securities that occurred after October 2015.

/s/  *Richard Hernandez*
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Jonathan K. Youngwood (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc.*

Dated: June 16, 2017